UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DANIEL LEONARD, | |
| Plaintiff, | |
| v. | C19-956 TSZ |
| THE BOEING COMPANY, | ORDER |
| Defendant. | |

THIS MATTER comes before the Court on Defendant Boeing Company's ("Boeing") Motion for Summary Judgment, docket no. 29. Having reviewed all papers filed in support of and in opposition to the motion, the Court enters the following order.

**Background**

Daniel Leonard ("Leonard") started working at Boeing on December 9, 1988, and was promoted to manager in 2011. Ex. A (Leonard Deposition) to Bushaw Decl., docket no. 30 at 8-9. In October 2018, Boeing received a complaint from one of its inspectors that Leonard made several unwelcome sexual advances and had engaged in sexual relationships with employees who directly reported to him. McGivern Decl., docket no. 32 at ¶ 3; Ex. C to McGivern Decl., docket no. 32 at 7-8. A Boeing corporate

ORDER - 1

investigator, Daniel McGivern, initiated an investigation into the complaint.  McGivern Decl., docket no. 32 at ¶¶ 2-3.

As part of the investigation, McGivern interviewed witnesses.  Ex. C to McGivern Decl., docket no. 32 at 7.  One witness who had reported directly to Leonard told McGivern that Leonard "started by venting about his wife" and "the difficulties he was having with his wife," explicitly detailed his affairs with women at Boeing, and propositioned the witness for an affair.  Ex. D to McGivern Decl., docket no. 32 at 16.  The witness described the incident as "gross and creepy."  *Id.*  McGivern interviewed another witness who had reported directly to Leonard and who described a nearly identical interaction in which Leonard described his problems in his marriage, his affairs at Boeing, and then repeatedly propositioned her.  Ex. E to McGivern Decl., docket no. 32 at 20.  McGivern also interviewed a witness who corroborated the experiences of these two witnesses but who did not allege that Leonard sexually harassed her.  The witness stated that Leonard's behavior made others "uncomfortable" and "upset" and that it was "inappropriate," "not professional," and was a "distraction" from work.  Ex. F to McGivern Decl., docket no. 32 at 23.

McGivern also interviewed Leonard.  Leonard denied some of the witness' accounts but admitted that he propositioned one of the witnesses for a sexual relationship and discussed his affairs and his marriage with that witness.  Ex. G to McGivern Decl., docket no. 32 at 25.  Leonard also admitted to having affairs with other female Boeing employees.  *Id*.

ORDER - 2

In February 2019, McGivern concluded his investigation and substantiated the allegation that "Leonard engaged in sexual relationships with women reporting to him; made unwelcome sexual advances toward women in his work area; and made inappropriate sexual comments." Ex. C to McGivern Decl., docket no. 32 at 7. McGivern further determined that Leonard engaged in conduct that violated Boeing's PRO-4332 "Workplace and Sexual Harassment" policy. *Id.* at 13.

Violations of PRO-4332 are subject to corrective action pursuant to PRO-1909, the employee's corrective action procedure. Ex. I to McGivern Decl., docket no. 32 at 36. PRO-1909 directs Boeing to use the violation matrix in its Employee Corrective Action Process Requirements ("ECAPR") to determine the appropriate disciplinary level based on the facts of the incident. Ex. K to Campbell Decl., docket no. 31 at 9. It also provides that violations by managers are "scrutinized more carefully to determine whether more severe [discipline] is warranted. This is specifically true when the issue relates to their role as a manager." *Id.* PRO-4332, PRO-1909, and ECAPR each state that the procedures "do[] not constitute a contract or contractual obligation, and the Company reserves the right, in its sole discretion, to amend, modify, or discontinue [their] use without prior notice, notwithstanding any person's acts, omissions or statements to the contrary." Ex. I to McGivern Decl., docket no. 32 at 31; Exs. K & L to Campbell Decl., docket no. 31 at 7, 18.

Based on McGivern's investigative findings and the "aggravating factors" present, Boeing assembled the Employee Corrective Action Review Board ("ECARB") to determine the appropriate level of discipline to issue Leonard. McGivern Decl., docket

ORDER - 3

no. 32 at ¶ 10.  According to the ECAPR, a violation of PRO-4332 usually results in time off work unless certain mitigating or aggravating factors are present.  Ex. L to Campbell Decl., docket no. 31 at 25; Campbell Decl., docket no. 31 at ¶ 5.  After reviewing the ECAPR matrix and finding evidence that Leonard's conduct was "persistent, intentional, repeated, harmful, disruptive, and caused a significant impact and high level of risk to the Company," which were listed aggravating factors, the Board unanimously voted in favor of Leonard's termination.[1]  Campbell Decl., docket no. 31 at ¶¶ 7-8.

On February 22, 2019, Boeing issued Leonard a corrective action memo discharging him from the company for making unwelcome sexual advances to two female employees and for making offensive comments of a sexual nature to other employees.  Ex. P to Burk Decl., docket no. 33 at 6.  Leonard appealed his termination, apologizing for his "poor choices," recognizing that he was "absolutely in the wrong," and apologizing "sincerely."  Ex. M to Campbell Decl., docket no. 31 at 61-62.  Boeing denied Leonard's appeal.  Ex. N to Campbell Decl., docket no. 31 at 64.  Leonard's attorney sent a second appeal, acknowledging that Leonard had conversations of "an adult nature" with the two witnesses in Boeing's investigation.  Ex. O to Campbell Decl., docket no. 31 at 66-67.

---

[1] Burk was the decisionmaker and did not consider age in his decision to terminate Leonard.  *See* Burk Decl., docket no. 33 at ¶¶ 9-10.  He does not remember any committee member discussing Leonard's age.  *Id.* ¶ 10.  Leonard also testified that he did not believe that his managers discriminated against him because of his age.  Ex. A (Leonard Deposition) to Bushaw Decl., docket no. 30 at 47.

After Boeing denied Leonard's second appeal, he brought this action against Boeing alleging (1) negligent infliction of emotional distress; (2) age-based disparate treatment pursuant the Washington Law Against Discrimination ("WLAD"), RCW § 49.60; and (3) breach of contract.  Docket no. 1.  On August 26, 2019, in response to Boeing's Motion to Dismiss, this Court dismissed with prejudice Leonard's negligent infliction of emotional distress claim, leaving his WLAD and breach of contract claim.  Docket no. 20.  Plaintiff then amended his complaint, docket no. 23, and now alleges breach of contract, negligent infliction of emotional distress,[2] and discrimination under the WLAD.  Boeing now moves for summary judgment on all claims.

**Discussion**

   **I.   Summary Judgment Standard**

The Court shall grant summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A fact is material if it might affect the outcome of the suit under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  To survive a motion for summary judgment, the adverse party must present affirmative evidence, which "is to be believed" and from

---

[2] Although the Court previously dismissed the negligent infliction of emotional distress claim with prejudice, Leonard realleged it in his Amended Complaint.  Docket no. 20.  Because that claim was previously dismissed with prejudice, it is not discussed further in this Order.  However, the Court notes that the claim is based on the same underlying facts and must also fail for the same reasons.

ORDER - 5

which all "justifiable inferences" are to be favorably drawn. *Id.* at 255, 257. When the record, however, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, summary judgment is warranted. *See Beard v. Banks*, 548 U.S. 521, 529 (2006) ("Rule 56(c) 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322)).

## II.     WLAD Age Discrimination Claim

The WLAD prohibits an employer from discharging any person from employment "because of age." RCW 49.60.180(2). To establish a prima facie case of age discrimination under the WLAD, a plaintiff must demonstrate that (1) he was within a statutorily protected class; (2) he was discharged by the defendant; (3) he was doing satisfactory work; and (4) after his discharge, the position remained open and the employer continued to seek applicants with qualifications similar to plaintiff. *Mikkelsen v. Pub. Util. Dist. No. 1 of Kittitas Cty.*, 189 Wn.2d 516, 527 (2017) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). If a plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Id.* If the defendant establishes a legitimate, non-discriminatory reason, the burden shifts back to the plaintiff, who must prove that the proffered reason is pretext for unlawful discrimination. *Id.*

Leonard fails to establish a prima facie case of age discrimination because he cannot show that he was performing satisfactory work. Citing his performance reviews,

Leonard contends that he met expectations throughout his tenure at Boeing. *See* Ex. D to Moody Decl., docket no. 34-2 at 30-106. No reasonable juror could find that an employee who violates company policy is performing "satisfactory work." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1208 (9th Cir. 2008) (holding that "no reasonable juror could find that [plaintiff's] job performance was satisfactory" where she violated company policy); *Hedenburg v. Aramark Am. Food Servs., Inc.*, 476 F. Supp. 2d 1199, 1207 (W.D. Wash. 2007) (holding that plaintiff was not performing satisfactory work where "the record reveals that she violated numerous [employer] policies"). Leonard does not dispute that he violated Boeing's policy. Rather, in his deposition, Leonard admitted that he engaged in behavior in violation of Boeing's policy but believes that he should have been disciplined in the form of "enhanced training" instead of termination.[3] Ex. A (Leonard Deposition) to Bushaw Decl., docket no. 30 at 37-38, 52, 71.

    Leonard also fails to present any evidence that Boeing's stated non-discriminatory reason for firing him was pretextual.[4] *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003) ("To show pretext using circumstantial evidence, a plaintiff must put forward specific and substantial evidence challenging the credibility of the employer's motives."). Leonard instead testified that he did not believe that anyone at Boeing

---

[3] Leonard's contention in opposition to the motion that sexual harassment "did not occur" (Plaintiff's Response, docket no. 34 at 9) is contradicted by his assertions throughout the record. Moreover, "[a] party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Wesley v. CBS Radio Servs., Inc.*, 2019 WL 4511930, at *9 (W.D. Wash. Sept. 19, 2019).

[4] Plaintiff's Response contains a section titled, "Evidence of Age Discrimination," which does not cite or reference any facts related to age discrimination. Docket no. 34 at 9-11.

discriminated against him. Ex. A (Leonard Deposition) to Bushaw Decl., docket no. 30 at 32, 36, 43, 47, 64.

Rather than satisfy the required showing under the *McDonnell Douglas* burden-shifting analysis, Leonard instead insists that the level of discipline he received was unwarranted and that Boeing's investigation of his conduct was flawed. These contentions cannot support Leonard's position. *See Hurtado v. Walmart Stores, Inc.*, 2014 WL 7337542, at *5 n.6 (E.D. Cal. Dec. 23, 2014) ("The mere fact that Plaintiff disagreed with the discipline imposed or that he calls them "bogus," is insufficient as factual support for the claim that, indeed, the discipline was imposed in an unlawful manner."); *White v. State*, 131 Wn.2d 1, 19-20 (1996) (it is not the courts' role "to act as super personnel agencies.").

In the alternative, when the Court evaluates the sufficiency of Boeing's investigation and decision to terminate Leonard, Leonard's contentions are unsupported by the record. In his deposition, Leonard admitted that he did not find fault with McGivern's handling of the investigation. Ex. Q (Leonard Deposition) to Second Bushaw Decl., docket no. 36 at 7. Leonard's own admissions also provide factual support for the aggravating factors that Boeing relied on in determining that termination was the appropriate level of discipline. Ex. G to McGivern Decl., docket no. 32 at 25 (Leonard's written statement providing support for "persistent" and "repeated" conduct); Ex. A to Bushaw Decl., docket no. 30 at 38 (Leonard's deposition testimony providing support for intentional conduct); Ex. M to Campbell Decl., docket no. 31 at 59

ORDER - 8

1  (Leonard's letter appealing Boeing's termination decision and admitting "deep remorse
2  for causing such a disruption").

3  Leonard failed to establish a prima facie case or present any evidence that
4  Boeing's legitimate non-discriminatory reason for his termination was pretextual.
5  Leonard's WLAD claim is therefore DISMISSED with prejudice.

6  **III.   Breach of Contract Claim**

7  Leonard asserts that Boeing breached its contract for failing to apply the PRO-
8  1909 and ECAPR matrix properly and consistently and that Boeing wrongfully
9  terminated him.  Leonard's breach of contract claim fails because the PRO-1909 and
10 ECAPR matrices are not contracts and do not otherwise constitute promises of specific
11 treatment upon which Leonard could have reasonably relied.

12 Employment policies and procedures can create enforceable promises concerning
13 terms of employment when a company's written materials induce an employee to
14 continue working by creating an atmosphere of job security and fair treatment through
15 promises of specific treatment in specific situations.  *Quedado v. Boeing Co.*, 168 Wn.
16 App. 363, 367-68 (2012).  To establish such a claim, a plaintiff must show that he
17 justifiably relied on an employer's statement, the statement amounts to a promise of
18 specific treatment in specific situations, and that the promise was breached.  *Id.* at 369.

19 In support of his breach of contract claim, Leonard primarily relies on *Mikkelsen*
20 *v. Pub. Util. Dist. No. 1 of Kittitas Cty.*, in which the court found that a corrective action
21 policy was "ambiguous and could plausibly be read as modifying [plaintiff's] at-will
22 status." 189 Wn.2d at 540.  The *Mikkelsen* court found that the policy altered plaintiff's

23

ORDER - 9

at-will employment status by stating that discharge may "only" occur "with due consideration of, and respect for, employee rights and expectations, whether those rights and expectations derive from employment policies, operation of law, or contract." *Id.* at 542-43.

Leonard's reliance on *Mikkelsen* is misplaced. Unlike the policy in *Mikkelsen*, Boeing's ECAPR and PRO-1909 policies both contain unambiguous disclaimers of contractual rights. Exs. K & L to Campbell Decl., docket no. 31 at 7, 18 (stating that "[t]his procedure does not constitute a contract or contractual obligation"). Here, there is also no similar provision altering the at-will nature of Leonard's employment. Instead, both the ECAPR and PRO-1909 policies unambiguously provide Boeing with broad discretion to make decisions regarding an employee's discipline. *See. e.g.*, Exs. K & L to Campbell Decl., docket no. 31 at 7-16, 18-56.

Moreover, applying the same legal test in *Quedado v. Boeing Co.*, a Washington court found that the same Boeing policies[5] did not create a binding promise upon which plaintiff could reasonably rely. 168 Wn. App. at 375 ("In summary, the facts here can lead only to the conclusion that Boeing intended BPI-2616 and PRO-1909 to guide the employment relationships, not to create a binding process through a set of promises.").[6] *See also Drobny v. Boeing Co.*, 80 Wn. App. 97, 104 (1995) (finding that PRO-1909 "is

---

[5] ECAPR was formerly titled BPI-2616, and PRO-1909 was formerly titled AP 580. Campbell Decl., docket no. 31 at ¶¶ 3-4.

[6] The Court finds that Boeing's policies do not constitute a promise of specific treatment and thus does not address whether Leonard justifiably relied on (or whether Boeing breached) any alleged promise.

ORDER - 10

not a promise of specific treatment under specific circumstances" and "[n]o implied contract existed between Boeing and [plaintiff]").

The Court therefore concludes as a matter of law that Boeing's PRO-1909 and ECAPR policies and procedures are not promises of specific treatment upon which Leonard could have reasonably relied. Leonard's breach of contract claim is therefore DISMISSED with prejudice.

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1) The Boeing Company's Motion for Summary Judgment, docket no. 29, is GRANTED. All of Plaintiff's claims are dismissed with prejudice.

(2) The Clerk is directed to send a copy of this Order to all counsel of record, enter a judgment consistent with this Order, and to CLOSE this case.

IT IS SO ORDERED.

Dated this 8th day of September, 2020.

/s/ Thomas S. Zilly

Thomas S. Zilly
United States District Judge

ORDER - 11